UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGINA GRISALES,

    Plaintiff,

v.                                                                                  Case No. 8:22-cv-112-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits (DIB).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by concluding that Plaintiff's mental health impairments were non-severe impairments. As the ALJ's decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    I.    *Background*

Plaintiff, who was born in 1965, claimed disability beginning January 25, 2016, which she later amended to November 11, 2019 (Tr. 36, 211). She was 53 years old on the amended alleged onset date. Plaintiff completed four or more years of college, earning a bachelor's degree and a master's degree, and her past relevant work experience included work as a brand manager in marketing, a director of admissions,

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

and a vice president of marketing (Tr. 37-38, 58-59, 232). Plaintiff alleged disability due to major depressive disorder; anxiety; post-traumatic stress disorder (PTSD); difficulty with absorbing new information, concentrating, gathering thoughts, and remembering information; suicidal thoughts; back problems; scoliosis pain; degenerative disc disease; arthrosis in her joints; bone density loss; and an inability to cope with stress and obligations (Tr. 231).

Given her alleged disability, Plaintiff filed an application for DIB (Tr. 211-14). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 65-110, 120-39). Plaintiff then requested an administrative hearing (Tr. 145-48). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 31-64). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7-25).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2021, and had not engaged in substantial gainful activity since January 25, 2016, the original alleged onset date (Tr. 12).[2] After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: cervical and lumbar spine disorders and generalized osteoarthritis (Tr. 12). Notably, the ALJ also

---

[2] Although the ALJ acknowledged that Plaintiff amended her alleged onset date to November 11, 2019 (Tr. 10), the ALJ used the original alleged onset date in the analysis (Tr. 12). Neither party takes issue with the ALJ's finding in the decision, however.

considered Plaintiff's mental impairments of depressive disorder, anxiety disorder, and trauma and stressor related disorder, finding that the mental impairments, considered singly or in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and thus were non-severe impairments (Tr. 13). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14).

The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work, except that Plaintiff could only occasionally climb or stoop; could frequently balance, kneel, crouch, or crawl; could frequently handle and finger bilaterally; and should avoid concentrated exposure to vibration and hazards (Tr. 16). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 17). Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), the ALJ determined that Plaintiff could perform all her past relevant work, as generally performed, as the work did not require the performance of work-related activities precluded by Plaintiff's RFC (Tr. 19, 59-63). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the

ALJ found Plaintiff not disabled (Tr. 20). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 202-07). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

    II.    *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P,

4

Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for

determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

III.    *Discussion*

Plaintiff argues solely that the ALJ erred by failing to find that Plaintiff's mental impairments constituted severe impairments. The claimant bears the burden of demonstrating the existence of a severe impairment or combination of impairments. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (*per curiam*) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[3] The ALJ considers the medical severity of a claimant's impairments at step two of the sequential analysis. 20 C.F.R. § 404.1520(a)(4)(ii). Step two operates as a threshold inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (*per curiam*). At step two, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 404.1522(a). Basic mental work activities include activities such as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, coworkers, and usual work

---

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b)(3)-(6). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel*, 800 F.2d at 1031; *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. *Turner*, 182 F. App'x at 948 (citations omitted); 20 C.F.R. § 404.1521.

Notably, however, the finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (*per curiam*) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied."); *see Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (*per curiam*) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step

7

two, and additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe). Here, the ALJ determined that Plaintiff's cervical and lumbar spine disorders and generalized osteoarthritis constituted severe impairments (Tr. 12). Accordingly, since the ALJ determined that Plaintiff suffered from severe impairments at step two, and thus proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other severe impairments is rendered harmless. *Gray*, 550 F. App'x at 853-54; *Packer*, 542 F. App'x at 892; *Heatly*, 382 F. App'x at 824-25.

Further, in considering the severity of Plaintiff's mental impairments, the ALJ complied with the regulations and provided substantial evidence in support of the assessment (Tr. 13-14). Agency regulations require a "special technique" be used by the ALJ when evaluating mental impairments, often referred to as the psychiatric review technique. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. § 404.1520a. Essentially, this technique requires an assessment regarding how the claimant's mental impairments impact four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). In rating the degree of limitation, the SSA employs a five-point scale in the functional areas: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). Rating the degrees of limitation as "none" or "mild" generally results in a conclusion that the mental impairment(s) is not severe unless the evidence otherwise indicates that the impairment(s) causes more than a minimal limitation in

the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520a(d)(1). When considering a claimant's mental impairments, the ALJ must incorporate into the written decision the pertinent findings and conclusions based on the technique and must make a specific finding as to the degree of limitation for each of the functional areas. *Moore*, 405 F.3d at 1213-14; 20 C.F.R. § 404.1520a(e)(4).

As noted, the ALJ considered Plaintiff's mental impairments of depressive disorder, anxiety disorder, and trauma and stressor related disorder and concluded that, whether considered singly or in combination, the impairments did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and thus found the impairments non-severe (Tr. 13). In doing so, the ALJ found that Plaintiff experienced no limitations in her ability to understand, remember, or apply information; mild limitation in her ability to interact with others; mild limitation in her ability to concentrate, persist, or maintain pace; and mild limitation in her ability to adapt or manage herself (Tr. 13-14). Because the ALJ found no more than mild limitations in any of the broad areas of functioning, the ALJ correctly determined that Plaintiff's mental impairments, taken either singly or in combination, did not constitute severe impairments. *See* 20 C.F.R. § 404.1520a(d)(1).

In making that determination, the ALJ relied upon substantial evidence in the record. As to Plaintiff's ability to understand, remember, or apply information, the ALJ acknowledged Plaintiff's testimony regarding her anxiety causing difficulty understanding, concentrating, and remembering but found that Plaintiff's mental status examinations generally showed no deficits in this area, and, despite reporting

that she had not taken any medications for her mental conditions in more than two years, Plaintiff appeared at a consultative examination with Michelle Ayala-Feliciano, Psy.D. alert and oriented; her expressive and receptive language was adequate; her conversational speech was spontaneous; her thought process was logical and goal-directed, although her thought content was characterized by cognitive distortions; her attention and concentration were adequate with good mental flexibility, immediate memory, recent memory, and remote memory; and her overall fund of knowledge was adequate (Tr. 13, 414-17, 516-20, 536-56).  As to Plaintiff's ability to interact with others, the ALJ found only a mild limitation based on Plaintiff's statements that she had difficulty controlling her emotions and had feelings of irritability and anxiety, which Plaintiff indicated led to screaming, crying, and getting palpitations (Tr. 13).  In addition to those statements, however, the ALJ pointed to Plaintiff's statements that she generally got along with other people and the mental status examinations generally showing no deficit in that area of functioning (Tr. 13, 414-17, 516-20, 536-56). For example, at the consultative examination with Dr. Ayala-Feliciano, Plaintiff was alert, oriented, and cooperative; maintained sustained eye contact and developed rapport easily; and demonstrated adequate social skills with good abstract reasoning and insight with fair judgment despite a sad and anxious mood with nervous affect (Tr. 13, 414-17).

In determining that Plaintiff experienced a mild limitation in her ability to concentrate, persist, and maintain pace, the ALJ pointed to Plaintiff's testimony that she could not perform her past relevant work because, among other reasons, she had

difficulty concentrating and had anxiety that caused difficulty understanding and concentrating, collecting her emotions, and remembering and because she lacked motivation and just wanted to stay home (Tr. 13-14). The ALJ again noted that the mental status examinations generally noted no deficit in this area of functioning, including showing only mildly impaired attention at times and, during the consultative examination, demonstrating adequate attention and concentration with good mental flexibility, immediate memory, recent memory, and remote memory (Tr. 14, 414-17, 516-20, 536-56). Last, regarding Plaintiff's ability to adapt or manage herself, the ALJ concluded that Plaintiff experienced a mild limitation, considering Plaintiff's statements that she lived with her husband, could drive no longer than 20 minutes due to drowsiness and low back pain, did laundry once per month, and, on a typical day, would meditate, cook simple meals, watch television, help her elderly mother, and walk for about 20 minutes (Tr. 14). As the ALJ noted, Plaintiff's doctors suggested that she make lifestyle changes to improve her symptoms, she was generally non-compliant with medications, and, at the consultative examination, she was alert and oriented, well-groomed, casually dressed, her language was adequate, her speech was spontaneous, her overall fund of knowledge was adequate, and she had good abstract reasoning and insight with fair judgment despite reporting that she had not taken any medications for her mental conditions in more than two years (Tr. 14, 375-77, 414-17, 536-56). Given the ALJ's proper application of the psychiatric review technique and the substantial evidence she relied upon in concluding that Plaintiff did not suffer from

a severe mental impairment, the ALJ did not err at steps two and three of the sequential analysis.

Notwithstanding, Plaintiff argues that the ALJ should not have considered Plaintiff's activities of daily living and non-compliance with medication as factors in determining that Plaintiff's mental impairment was non-severe. In determining a Plaintiff's RFC, the ALJ may consider evidence of the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3); Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In evaluating and discrediting a claimant's complaints, therefore, the ALJ may consider the claimant's daily activities along with several other factors. 20 C.F.R. § 404.1529(c)(3)(i); *Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011) ("A claimant's daily activities may be considered in evaluating and discrediting a claimant's subjective complaints") (citation omitted); *cf. Dyer v. Barnhart*, 395 F.3d 1206, 1212 ("In sum, the ALJ considered Dyer's activities of daily living, the frequency

of his symptoms, and the types and dosages of his medications, and concluded that Dyer's subjective complaints were inconsistent with his testimony and the medical record. The ALJ thus adequately explained his reasons and it was reversible error for the district court to hold otherwise."). As Plaintiff notes, participation in everyday activities of short duration, such as housework, will not necessarily disqualify a claimant from disability. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1108 (11th Cir. 2021) ("In our view, it goes almost without saying that many people living with severe mental illness are capable of eating, putting on clothes in the morning, and purchasing basic necessities. None of those activities, however, say much about whether a person can function in a work environment—with all its pressures and obligations—on a sustained basis."). Notwithstanding, an ALJ is not precluded from considering a claimant's daily activities at all in determining disability. 20 C.F.R. § 404.1529(c)(3); *Hoffman v. Astrue*, 259 F. App'x 213, 219 (11th Cir. 2007) (*per curiam*).

In this instance, the ALJ considered Plaintiff's testimony regarding her ability to drive for short periods of time, meditate, cook simple meals, watch television, take walks of short duration, do laundry monthly, and help with her elderly mother in finding that Plaintiff experienced no more than mild limitations in the functional area of adapting or managing herself (Tr. 14, 37, 54-55). The ALJ considered such activities of daily living in conjunction with the doctors' recommendations to make lifestyle changes to improve her symptoms, her noncompliance with medications, and the observations of Dr. Ayala-Feliciano during the consultative examination (Tr. 14, 375-76, 379, 417, 548-54). The ALJ thus did not solely rely upon Plaintiff's activities of

daily living in concluding that Plaintiff experienced only mild limitations in her ability to adapt or manage herself but rather properly considered Plaintiff's activities of daily living along with other factors in appropriately finding that Plaintiff's limitations in that area of functioning were mild and that Plaintiff's mental impairments were non-severe.

Plaintiff also contends that the ALJ should not have considered her noncompliance with medication since Plaintiff provided a good reason for such noncompliance, *i.e.*, that her medication made her drowsy and increased her restless leg syndrome. Generally, the ALJ may consider noncompliance with treatment in determining whether a claimant is disabled, as the failure to follow prescribed treatment without a good reason will preclude a finding of disability. *See* 20 C.F.R. § 404.1530(a) & (b); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Here, the ALJ referred to Plaintiff's noncompliance with medication but did not rely primarily or even significantly upon Plaintiff's noncompliance with medication in determining that Plaintiff's mental impairments were non-severe (Tr. 14). Rather, the ALJ referenced it as one of many factors demonstrating that Plaintiff's mental impairments were non-severe. Even so, as the Commissioner highlights, several treatment notes documented Plaintiff's noncompliance or non-use of medication, including (1) statements to Dr. Ayala-Feliciano that Plaintiff's most recent psychoactive medication prescribed was for Pristiq but that Plaintiff had not taken any psychoactive medications in over two years (Tr. 417); (2) statements to Dr. Bich-Ngoc Pham that Plaintiff had been under psychiatric care four to five years before her May 2020

14

appointment when she was overwhelmed with work, had been on Pristiq off and on for the past few years, decided to retire and move, felt like most of her mood issues were work-related, got off medications and had not had too many symptoms or issues with any acute depressed or anxious moods and no panic attacks, and only experienced some mild stressors and recurrent sleep issues (Tr. 379); (3) notations by Dr. Pham in June 2020 that Plaintiff was aware that she should not be taking her prescription sleeping pills nightly and that Plaintiff should continue with stress modification, simplifying her life, organizing, and prioritizing to reduce tension and anxiety (Tr. 375-76); and (4) received prescriptions for Lexapro and Vistaril in October 2020 but felt neither one was helping so stopped Lexapro in mid-November 2020 with reported side effects (Tr. 548-49). Further, when Plaintiff reported side effects, her medication was adjusted (*see* Tr. 551-54). Accordingly, the ALJ considered Plaintiff's noncompliance with medication as one of several factors in determining that Plaintiff's mental impairments were non-severe and did not interfere with her ability to perform work activities. As indicated, therefore, the ALJ properly considered the severity of Plaintiff's mental impairments at steps two and three.

Beyond that, the ALJ also considered Plaintiff's mental impairments in assessing Plaintiff's RFC at step four (Tr. 16-19). Indeed, although an ALJ need not determine whether every alleged impairment is "severe" at step two, the ALJ must consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation. 20 C.F.R. § 404.1545; *see Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). To

begin, the ALJ discussed Plaintiff's testimony regarding issues with her past relevant work and mental health issues that arose (Tr. 16). As the ALJ recognized, Plaintiff testified that she worked as a brand manager for three years, but she quit that position due to anxiety, stress, and suicidal ideation, which led to a voluntary hospitalization for her suicidal thoughts (Tr. 16, 39-40). Prior to that, Plaintiff worked as an admissions director, which required a lot of marketing and travel and became too much for her (Tr. 16, 40). In addition, Plaintiff worked as a marketing director for 11 years but left that position due to internal conflict arising from her purported role as a whistleblower (Tr. 16, 40-42). According to Plaintiff, she could not perform any of her past relevant work because she had trouble concentrating, she is insecure, and she could not sit for longer than 10 minutes, type, or stand for more than 10 minutes (Tr. 16, 42-49).

The ALJ again discussed Plaintiff's statements regarding her anxiety causing difficulty understanding, concentrating, controlling emotions, and remembering; her feelings of irritability and anxiousness, leading to screaming, crying, and palpitations; her inability to sleep well; her lack of motivation and desire to stay home; and her ability to generally get along with others (Tr. 16). The ALJ also noted that Plaintiff was seeing a psychiatrist and taking medications for her mental health conditions and that Plaintiff tried therapy (Tr. 16). As the ALJ stated, Plaintiff indicated that therapy did not work for her, and Plaintiff did not feel that her medications worked for her either and that the medications caused side effects of dryness, headaches, stomachache, restlessness, and blurry vision (Tr. 16).

After addressing the medical evidence relating to Plaintiff's physical impairments, the ALJ addressed the medical opinions and prior administrative findings relating to both Plaintiff's mental and physical impairments (Tr. 18-19). As the ALJ indicated, the state agency medical consultants at the initial and reconsideration levels considered the evidence of record and found Plaintiff's mental impairments of depression and anxiety non-severe and concluded that Plaintiff experienced no more than mild limitations in any of the mental areas of functioning (Tr. 18, 65-74, 78-96). The ALJ found the state agency medical consultants' opinions persuasive, especially given the consistency of their opinions with the findings in the records submitted after the issuance of their opinions (Tr. 18-19).

The ALJ also considered the consultative psychological evaluation of Dr. Ayala-Feliciano (Tr. 414-17). Dr. Ayala-Feliciano assessed Plaintiff with persistent depressive disorder and generalized anxiety disorder but noted that Plaintiff exhibited no signs of significant cognitive deficits or impaired judgment and could manage her financial affairs (Tr. 18, 417). The ALJ found Dr. Ayala-Feliciano's opinion persuasive as she based her opinion on a clinical interview with Plaintiff, a mental status examination, behavioral observations, and a review of available records and because the opinion was consistent with the other medical evidence (Tr. 19, 415-17).

The ALJ then discussed Plaintiff's mental health treatment with Nurse Practitioner Vickie Pose-Kerlin at Florida Behavioral Health (Tr. 19, 536-56). As the ALJ discussed, NP Pose-Kerlin indicated that Plaintiff was intermittently impaired for work – although she noted that Plaintiff could care for herself and perform activities

17

of daily living – but did not explain to what extent Plaintiff would be impaired for work (Tr. 538, 541, 543). Later treatment notes from Plaintiff's treatment with Linda Gottwald, PMHNP, at Florida Behavioral Health, indicated that Plaintiff was not impaired for work (Tr. 548, 550). Consequently, the ALJ did not find NP Pose-Kerlin's opinion persuasive (Tr. 19).

Given the foregoing, the ALJ provided substantial evidence in support of her finding that Plaintiff's mental impairments were non-severe. To be sure, Plaintiff was diagnosed with mental impairments over the course of her treatment and some treatment notes reflect complaints of anxiety, depression, poor energy, and difficulty sleeping, which the ALJ acknowledged. Plaintiff cannot simply rely upon her diagnoses of mental impairments, however. Rather, as the Commissioner contends, "[d]iagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (*per curiam*). Further, the severity of a medically ascertained impairment is not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter*, 791 F.2d at 1547. Moreover, the fact that Plaintiff was diagnosed with anxiety and depression and periodically prescribed medication for those impairments likewise does not lead to a finding that Plaintiff is limited by her mental impairments in her ability to work. *See*

*Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 879 (11th Cir. 2012) (concluding that, though the record indicated a history of anxiety and depression for which the claimant was prescribed medication, nothing in the record indicated that the claimant experienced any effects from the mental impairments that could be expected to interfere with her ability to work). While the ALJ acknowledged that Plaintiff had mental impairments and received treatment and medication for those impairments, the ALJ also provided substantial evidence in support of her finding that Plaintiff's mental impairments were non-severe and did not significantly affect Plaintiff's ability to work.[4]

To the extent that Plaintiff asks me to reweigh the evidence or substitute my opinion for that of the ALJ, I cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if I would have reached a different conclusion. *See Mitchell*, 771 F.3d at 782; *Bloodsworth*, 703 F.2d at 1239. "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). To reiterate, I may not reweigh the evidence or substitute my own judgment for that

---

[4] I am cognizant of the Eleventh Circuit's analysis in *Simon* discussing the unpredictable fluctuation of symptoms, including good days and bad days, for individuals with mental disorders and the directive that "an ALJ must take into account the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace" when evaluating a claimant's medical records. 7 F.4th at 1106-07. Upon review of the ALJ's decision and the evidence of record in this case, I am satisfied that the ALJ fully and properly considered the medical evidence in conjunction with the other evidence describing Plaintiff's subjective complaints regarding her mental impairments.

of the ALJ, even if I find the evidence preponderates against the ALJ's decision. *See Mitchell*, 771 F.3d at 782; *Bloodsworth*, 703 F.2d at 1239.

    IV.    *Conclusion*

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence. Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 22nd day of March, 2023.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:    Counsel of Record